UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00045-LLK

LOWELL THOMAS CLAY                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Plaintiff filed a Motion for Judgment on the Pleadings (Docket #23), to which Defendant responded in opposition (Docket # 30), and the case is ripe for determination. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 18).

Plaintiff, a former combat veteran, applied for disability benefits through the Veterans Administration (VA). The VA adjudicated him to be 70-percent disabled due to service-connected post-traumatic stress disorder (PTSD) and, effective December 3, 2014, increased his disability rating to 100 percent based on the December 3, 2014 findings and opinions of VA clinical psychologist Anne Goodnow, Psy.D. Adjudication at Administrative Record (AR), p. 297; findings at AR, pp. 1541-48.

20 C.F.R. § 404.1527(c) requires that "[r]egardless of its source [e.g., the VA], we [i.e., the Social Security Administration] will evaluate every medical opinion we receive." The Administrative Law Judge's (ALJ's) mental residual functional capacity (RFC) finding did not accord with applicable legal standards because the ALJ's decision did not "evaluate" (or even mention) Dr. Goodnow's assessment.

Accordingly, the Court will GRANT Plaintiff's Motion for Judgment on the Pleadings (Docket # 23) and REMAND this matter to the Commissioner for a new decision evaluating Dr. Goodnow's findings and opinions.

1

**In performing the requested review of the ALJ's mental RFC determination, the Court considered Dr. Goodnow's assessment.**

Plaintiff argues that the ALJ's mental "RFC determination is not supported by substantial evidence" (Docket # 23-1, p. 10), and he gives six supporting reasons (*Id.*, pp. 11-16). The fourth reason is the VA's December 3, 2014 increase of disability rating to 100 percent. According to Plaintiff: "[t]his change was based on total occupational and social impairment; difficulty in adapting to work, stressful circumstances, and worklike setting; disturbances of motivation and mood; difficulty in establishing effective work and social relationships; impairment of short- and long-term memory; mild memory loss; depressed mood; chronic sleep impairment; anxiety; and suspiciousness" (Docket # 23-1, p. 15 referring to VA Reasons For Decision at AR, p. 297).

These reasons for changing its disability rating cited by the VA correspond precisely to the clinical symptoms identified by Dr. Goodnow in her completion of the PTSD Disability Benefits Questionnaire (AR, pp. 1547-48). While Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings (Docket # 23-1) does not specifically mention Dr. Goodnow by name, the Court will exercise its discretion to consider Dr. Goodnow's findings and opinions contained in her completion of the PTSD Questionnaire (AR, pp. 1541-48) in reviewing the ALJ's mental RFC determination.

**The ALJ erred in not evaluating the weight given to Dr. Goodnow's assessment.**

Plaintiff is a veteran of the Gulf War Era, having served in the Army from September 22, 1998 through November 26, 2013. AR, p. 296. He was deployed to Iraq on three occasions. During his first deployment from February 2003 through February 2004, he was engaged in heavy firefights, which resulted in his witnessing many deaths. (AR, pp. 733-734). One particularly traumatic event occurred when he was forced to kill a young boy who was about the same age as his 10 year old son. (*Id.*) The Iraqi boy had an AK-47, and Plaintiff felt his life was in danger. (*Id.*) During Plaintiff's second deployment from April 2005 through April 2006, his unit provided route security, his convoy took direct and indirect fire daily and experienced a number of improvised explosive device (IED) attacks. (*Id.*)

During his third deployment from April 2008 through April 2009, Plaintiff provided personal security detail, engaged in firefights, mortar fire, and rocket attacks. (*Id.*) Plaintiff never felt safe. (*Id.*)

Dr. Goodnow's PTSD Questionnaire tracks Criteria A through H of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). According to Dr. Goodnow, Plaintiff's A through H Criteria ratings are as follows (AR, pp. 1545-47):

Criterion A

Exposure to actual or threatened a) death, b) serious injury, c) sexual violation, in one or more of the following ways:

• Directly experiencing the traumatic event(s)

• Witnessing, in person, the traumatic event(s) as they occurred to others.

Criterion B

Presence of (one or more) of the following intrusion symptoms associated with the traumatic event(s), beginning after the traumatic event(s) occurred:

• Recurrent, involuntary, and intrusive distressing memories of the traumatic event(s)

• Recurrent distressing dreams in which the content and/or affect of the dream are related to the traumatic event(s)

• Dissociative reactions (e.g., flashbacks) in which the individual feels or acts as if the traumatic event(s) were recurring. (Such reactions may occur on a continuum, with the most extreme expression being a complete loss of awareness of present surroundings).

• Intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event(s)

• Marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event(s)

Criterion C

Persistent avoidance of stimuli associated with the traumatic event(s), beginning after the traumatic event(s) occurred, as evidence by one or both of the following:

• Avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with thee traumatic event(s)

• Avoidance of or efforts to avoid external reminders (people, places, conversations, activities, objects, situations) that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic event(s)

Criterion D

Negative alterations in cognitions and mood associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following:

• Persistent and exaggerated negative beliefs or expectations about oneself, others, or the world (e.g., "I am bad," "No one can be trusted,: "the word is completely dangerous,: "My whole nervous system is permanently ruined").

• Persistent, distorted cognitions about the cause or consequences of the traumatic event(s) that lead to the individual to blame himself/herself or others.

• Persistent negative emotional state (e.g., fear, horror, anger, guilty, or shame).

• Marked diminished interest or participation in significant activities.

• Feelings of detachment or estrangement from others.

Criterion E

Marked alterations in arousal and reactivity associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred, as evidenced by two (or more) of the following:

• Irritable behavior and angry outbursts (with little or no provocation) typically expressed as verbal or physical aggression toward people or objects.

• Hypervigilance.

• Exaggerated startle response.

• Problems with concentration.

• Sleep disturbance (e.g., difficulty falling or staying asleep or restless sleep).

Criterion F

The duration of the symptoms described above in Criteria B, C, and D are more than 1 month.

Criterion G

The PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

Criterion H

The disturbance is not attributable to the physiological effects of a substance (e.g., medication, alcohol) or another medical condition.

Despite the foregoing specific and extreme DSM-5 PTSD clinical criteria, which the ALJ did not acknowledge, the ALJ found that Plaintiff's PTSD results in non-disabling mental limitations:

He can perform simple, routine, repetitive work tasks, meaning tasks that apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, with the ability to deal with problems involving several concrete variables in and from standardized situations. The claimant can occasionally interact with coworkers and supervisors. He cannot maintain sustained interaction with the general public. He should not work in a fast paced or production based work environment, but can do entry level or goal oriented work.

(AR, p. 17).

The above mental RFC determination is not supported by substantial evidence and is not in accord with applicable legal standards because it fails to evaluate, take into account, or even recognize the existence of Dr. Goodnow's findings and opinions. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive").

**The ALJ did <u>not</u> err in discounting the VA disability rating itself.**

While the ALJ erred in not considering the clinical evidence that formed the underlying basis of the VA disability rating of 100 percent, the ALJ did not err in discounting the rating itself. The ALJ properly found that the VA disability decision is not binding for Social Security disability purposes because different rules and standards apply. *Compare* ALJ's decision at AR, p. 25 with 20 C.F.R. § 404.1504 ("[A] determination made by another agency that you are disabled or blind is not binding on us [the social security administration]" because it is "based on its rules" rather than "social security law").

This does not mean, however, that medical evidence generated as part of the VA disability evaluation process may not be binding or may be ignored under the rubric of the non-binding nature of the decision itself. *See Hicks v. Comm'r of Soc. Sec.*, No. 1:15-cv-110, 2016 WL 490049, at *7 (S.D. Ohio

Jan. 6, 2016) (holding that, although a VA disability rating is not binding, this does not provide an ALJ "carte blanche" to reject "the objective evidence cited in the [VA] Disability Decision") and *Golden v. Comm'r*, No. 3:14-CV-492, 2015 WL 8917876 (E.D. Tenn. Nov. 23, 2015) (remanding case for consideration of examining VA psychiatrist's opinion that formed the underlying basis for VA's increasing disability rating due to PTSD from 70 to 100 percent).[1]

Dr. Goodnow's findings and opinions were based on standard clinical criteria and were not premised upon and did not take into account special rules or procedures of VA disability evaluation. The ALJ discounted the VA disability rating due to evidence of subsequent improvement with treatment, including improved general assessment of functioning (GAF) scores, and increased daily activities (AR, p. 25). While this provided an adequate basis for discounting the VA disability rating, it did not provide an adequate reason for discounting Dr. Goodnow's findings and opinions.

**Plaintiff's remaining arguments are unpersuasive.**

As stated above, Plaintiff argues that the ALJ's mental "RFC determination is not supported by substantial evidence" (Docket # 23-1, p. 10), and he gives six supporting reasons (*Id.*, 11-16). The fourth reason is the VA's December 3, 2014 disability rating of 100 percent. For the reasons above, the argument is unpersuasive to the extent it is based on the rating itself and persuasive to the extent it is based on the ALJ's failure to recognize the clinical evidence that formed the rating's underlying basis. However, for the reasons below, Plaintiff's Reasons 1, 2, 3, 5, and 6 are unpersuasive.

First, Plaintiff argues that *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997) bound the ALJ to the prior ALJ's finding that he "can tolerate minimal superficial contact with coworkers and supervisors,

---

[1] The case law anticipates the amendments to 20 C.F.R. § 404.1504, which apply to claims filed on or after March 27, 2017 (and, therefore, do not apply in this case, which was filed before March 27, 2017). The amended version of the regulation continues to uphold the principle that a disability determination of another agency "is not binding on us" and adds that "we will not provide any analysis in our determination" regarding the other agency determination. "However, we will consider all of the supporting evidence underlying [the other agency determination] that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504.

6

but no contact with the general public" (AR, p. 64). The ALJ recognized that *Drummond* bound her to "the previously adjudicated [RFC], absent evidence of medical improvement or worsening of his condition" (AR, p. 18). As noted above, the ALJ found evidence of subsequent improvement with treatment, including improved GAF scores, and increased daily activities (AR, p. 25). This finding warranted departure from the prior ALJ's RFC finding. Additionally, as the prior decision was a <u>denial</u> decision, even if the ALJ were bound to the prior ALJ's RFC findings, this would not require an ultimate finding of disability. In other words, Plaintiff has failed to show that any error was harmful.

Second, Plaintiff argues that ALJ erred in declining to defer to certain "marked" limitations found by the one-time consultant, licensed psychological practitioner (LPP) P. Leanne Scott, M.S. Among other things, Ms. Scott found that Plaintiff is markedly limited in his abilities to tolerate stress and pressure of day-to-day employment and to response appropriately to the general public, supervisors, and co-workers (AR, p. 1363). The ALJ rejected this finding for the same reasons she found herself not bound by the prior ALJ's findings, i.e., improvement with treatment and increased daily activities (AR, pp. 21-22 and 25-26).

Third, Plaintiff argues that the ALJ erred in declining to accept certain findings of his readjustment counselor at the Nashville Vet Center, Elizabeth Sherr, M.A. Ms. Sherr completed the Mental Impairment Medical Source Statement, finding, among other things, that Plaintiff has "poor or no" useful ability to function mentally in 5 of 16 areas necessary to perform even unskilled work (AR, p. 1464). The ALJ gave "no weight" to these disabling findings because Ms. Sherr is an "other" (as opposed to an "acceptable") medical source as contemplated by 20 C.F.R. § 404.1527. Ms. Sherr offered no supporting evidence from the treatment record, and her findings are, in fact, inconsistent with the VA treatment notes (AR, p. 26).

Fifth, Plaintiff argues that the ALJ improperly dismissed his wife's Third Party Function Report. (ALJ's decision at AR, pp. 24-25, referring to Report at AR, pp. 240-248). The ALJ found Mrs. Clay's

7

statement to be incredible to the extent it opined limitations exceeding the ALJ's mental RFC determination (AR, pp. 24-25).

Sixth, Plaintiff argues that the ALJ erred in not accepting the finding of the state-agency program psychologists, Mary Thompson, Ph.D., and Jane Brake, Ph.D., which adopted the prior ALJ's finding that Plaintiff should have "no contact with the general public" (AR, pp. 94, 112). The argument is unpersuasive for the same reasons the ALJ was not bound to the prior ALJ's RFC findings. *See* discussion of first reason, *supra*.

## Order

For the above reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket # 23) is hereby GRANTED. This matter is REMANDED to the Commissioner for a new decision evaluating the findings and opinions of clinical psychologist Anne Goodnow, Psy.D.

February 22, 2018

**Lanny King, Magistrate Judge**
**United States District Court**